## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. |
| | ) | |
| STEVEN MERKES, | ) | <u>Count One</u>: 18 U.S.C. § 201(c) |
| | ) | (Illegal Gratuity) |
| Defendant. | ) | |
| | ) | |

### INFORMATION

The United States of America informs the Court that:

### COUNT ONE
### Illegal Gratuity
### 18 U.S.C. § 201(c)

1.  At all times relevant to this Information, Defendant

**STEVEN MERKES**

was employed as a public official by the Department of Defense

("DOD").

2.  Defendant **MERKES** was stationed in Stuttgart, Germany,

where he served as an operational support planner in the Future

Operations Division of the United States Army Headquarters,

Special Operations Command-Europe (HQSOCEUR).

3.  Defendant **MERKES**'s duties included the planning and

management of military exercises for U.S. forces in Eurpoe,

including Romania.  Pursuant to these duties, the defendant worked with active duty project officers to evaluate, select, and manage outside contractors, who provided services in connection with the exercises.  The defendant was authorized to evaluate for and recommend to the project officers specific contracting firms.

4.    Philip Bloom was a United States citizen who operated and controlled construction and service companies in Romania and the Republic of Iraq that did business with the United States government.

5.    From in or about January 2005 until in or about April 2005, in Stuttgart, Germany and elsewhere, Defendant **MERKES**, being a public official for DOD, otherwise than as provided by law for the proper discharge of official duty, directly and indirectly demanded, sought, received, accepted, and agreed to receive and accept a thing of value personally for or because of an official act performed and to be performed by Defendant **MERKES**; that is, Defendant **MERKES** accepted a job offer from Philip Bloom for and because of official acts to be performed by Defendant **MERKES**, including helping Philip Bloom apply and bid on a contract for the United States government.

**All in violation of Title 18, United States Code, Section 201(c), and pursuant to the extraterritorial venue provision, Title 18, United States Code, Section 3238.**

**FORFEITURE**

6.    Pursuant to Title 18, United States Code, **Sections**
981(a)(1)(C) and 924(d), and Title 28, United States Code,
Section 2461(c), Defendant **MERKES,** once convicted of Count 1
(unlawful gratuity in violation of 18 U.S.C. § 201(c)) shall
forfeit to the United States the following property:

> a.    Any property, real or personal, which constitutes
> or is derived from proceeds traceable to the
> offense.

> b.    A sum of money equal to the total amount of
> proceeds traceable to the unlawful gratuity in
> violation of 18 U.S.C. § 201(c), as charged in
> Count 1, for which the defendant is convicted.
> If more than one defendant is convicted of an
> offense, the defendants so convicted are jointly
> and severally liable for the amount involved in
> such offense.

6.    Pursuant to Title 21, United States Code, Section
853(p), as incorporated by Title 26, United States Code, Section
2461, the defendant shall forfeit substitute property, up to the
value of the amount described in the foregoing paragraphs, if, by
any act or omission of a defendant, the property described in
such paragraphs, or any portion thereof, cannot be located upon
the exercise of due diligence; has been transferred, sold to or
deposited with a third party; has been placed beyond the

jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

(Criminal Forfeiture, in violation of Title 18, United States Code, Sections 981(a)(1)(C) and 924(d), and Title 26, United States Code, Section 2461)

DATED: December 29, 2006, at Washington, DC.

FOR THE UNITED STATES

ANDREW LOURIE
ACTING CHIEF
PUBLIC INTEGRITY SECTION

By:

James A. Crowell IV
John P. Pearson
Trial Attorneys
Public Integrity Section

Patrick Murphy
Trial Attorney
Asset Forfeiture and
Money Laundering Section

U.S. Department of Justice
Criminal Division
1400 New York Ave., NW
Washington, DC 20005
(202) 514-1412
James.crowell@usdoj.gov
John.pearson@usdoj.gov
Patrick.murphy@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    )
                             )
            v.               )      Criminal No.
                             )
STEVEN MERKES,               )      <u>Count One</u>: 18 U.S.C. § 201(c)
                             )                (Illegal Gratuity)
        Defendant.           )
_____)

## PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States of America, by and through its undersigned counsel, and the Defendant, STEVEN MERKES, agree as follows:

1.    The Defendant is entering this agreement and is pleading guilty freely and voluntarily without promise or benefit of any kind, other than contained herein, and without threats, force, intimidation, or coercion of any kind.

2.    The Defendant knowingly, voluntarily, and truthfully admits the facts contained in the attached Factual Basis for Plea.

3.    The Defendant agrees to plead guilty to a two-count Information charging him with one count of accepting unlawful gratuities in violation of 18 U.S.C. § 201(c).  The Defendant

admits that he is guilty of these crimes, that he is pleading guilty because he is guilty, and that he understands that he will be adjudicated guilty of these offenses.

4.    The Defendant understands the nature of the offenses to which he is pleading guilty, and the elements thereof, including the penalties provided by law.    The maximum penalties for a violation of 18 U.S.C. § 201(c) are two years of imprisonment, a fine of $250,000, and a mandatory special assessment of $100. The Defendant also understands that the Court may impose a term of supervised release to follow any incarceration in accordance with 18 U.S.C. § 3583, and that, in this case, the authorized term of supervised release is not more than one year.    The Defendant also understands that the Court may impose restitution, costs of incarceration, and costs of supervision.

5.    If the Court accepts the Defendant's pleas of guilty to one count of accepting unlawful gratuities in violation of 18 U.S.C. § 201(c), and the Defendant fulfills each of the terms and conditions of this agreement, the United States agrees that it will not further prosecute the Defendant for crimes arising from the facts set forth in the Factual Basis for Plea or for crimes disclosed to the Government during briefings conducted pursuant to this agreement.    This paragraph does not apply to any "crimes of violence," as that term is defined by 18 U.S.C. § 16, or to any offenses which the Defendant failed to disclose fully to the

2

Government.  The Defendant also understands that this Plea
Agreement affects only criminal charges and shall not be
construed, in whole or in any part, as a waiver, settlement, or
compromise of any civil or administrative remedies available to
any agency or department of the United States or any state or
local government.

6.    The Defendant agrees that if the Court does not accept
his pleas of guilty, this agreement shall be null and void.

### Sentencing Guidelines and Sentencing Factors

7.    The parties to this agreement agree that the
Defendant's sentence is governed by the United States Sentencing
Guidelines, effective November 1, 2005, and that the applicable
Guideline is U.S.S.G. § 2C1.2, Offering, Giving, Soliciting, or
Receiving a Gratuity.  The parties agree to recommend the
following guideline calculations:

    2C1.2(a)(1) Base Offense Level . . . . . . . . . . . . . 11

    2C1.2(b)(2) & 2B1.1(b)(1)(B) Value of Gratuity of more
    than $10,000 and less than $30,000 . . . . . . . . . . .4

    TOTAL  . . . . . . . . . . . . . . . . . . . . . . . . . 15

8.    Should the Defendant comply fully with his obligations
under this agreement and subject to satisfactory debriefings at
which the Defendant is entirely truthful and fully accepts
responsibility for his criminal conduct and continues to accept
responsibility for his criminal conduct up to and including the

3

sentencing date, the United States will recommend that the
Defendant receive a two-level reduction for acceptance
of responsibility under U.S.S.G. § 3E1.1, yielding a net offense
level of 13 and a guideline range of 12-18 months imprisonment.

9.  The parties agree to recommend that no adjustment to the
guideline level other than those discussed in this agreement is
appropriate, and the Defendant agrees to seek no downward
departures.  The Government agrees to seek no upward departures,
as long as the Defendant is entirely truthful during the course
of his cooperation pursuant to this agreement.

10.  The Defendant understands that these recommendations
and agreements are not binding on the Court or the United States
Probation Office, and that he will not be entitled to withdraw
his pleas of guilty if the Court rejects these recommendations.
The Defendant further understands that while the Court must
consult the Sentencing Guidelines, they are advisory and the
Defendant may be sentenced up to the statutory maximum.

11.  The Defendant understands and acknowledges that he may
receive any sentence within the statutory maximum for the
offenses of conviction.

12.  The United States cannot and does not make any promise
or representation as to what sentence the Defendant will receive
or what fines or restitution, if any, the Defendant may be
ordered to pay.  The Defendant understands that the sentence and

4

the sentencing guidelines applicable to this case will be determined solely by the Court, with the assistance of the Probation Office, that the Court may impose the maximum sentence permitted by the statutes, and that the Defendant will not be permitted to withdraw his plea regardless of the sentence calculated by the Probation Office or imposed by the Court.

### Venue

13.    The Defendant agrees, for purposes of entering his initial appearance, arraignment, plea of guilty, sentencing and all other appropriate proceedings relevant to the filing of this agreement, to consent to the jurisdiction of the United States District Court for the District of Columbia.  The Defendant expressly waives his right to object to venue in the District of Columbia.

### Right of Allocution

14.    The United States reserves the right to allocute as to the nature and seriousness of the offense and to make a recommendation as to sentencing.  The attorneys for the United States will inform the Court and the Probation Office of: (1) this agreement; (2) the nature and extent of the Defendant's activities with respect to this case; and (3) all other information in its possession relevant to sentencing.

## Waiver of Appeal

15.  The Defendant, knowing and understanding all of the
facts set out herein, including the maximum possible penalties
that could be imposed, and knowing and understanding his right to
appeal the sentence as provided in 18 U.S.C. § 3742, hereby
expressly waives the right to appeal any sentence within the
maximum provided in the statute of conviction (or the manner in
which that sentence was determined) on the grounds set forth in
18 U.S.C. § 3742 or on any ground whatever, in exchange for the
concessions made by the United States in this plea agreement.
This agreement does not affect the rights or obligations of the
United States as set forth in 18 U.S.C. § 3742(b).  Although the
Defendant agrees to give up his right to appeal the actual
sentence the Court imposes and the manner in which the Court
determines the Defendant's sentence, the Defendant retains his
right to appeal whether his plea was unlawful, in some way
involuntary, and the reasonableness of the sentence imposed by
the Court.

## Cooperation

16.  The Defendant agrees that he will cooperate fully,
completely, and truthfully with all investigators and attorneys
of the United States, by truthfully providing all information in
his possession relating directly or indirectly to all criminal
activity and related matters which concern the subject matter of

6

this investigation and of which he has knowledge, or relating to other matters deemed relevant to the United States. This includes, but is not limited to, participating in debriefings by attorneys and investigators within the United States Department of Justice Criminal Division, Federal Bureau of Investigation, Internal Revenue Service, and Special Inspector General for Iraq Reconstruction, and testifying fully and completely before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

17.  If, as part of the Defendant's obligation to cooperate as set forth in this agreement, the Defendant provides self-incriminating information, such information shall be subject to the protections, terms, and conditions set forth in U.S.S.G. § 1B1.8.  These protections do not apply, however, to information provided by the Defendant to the Government prior to this agreement being approved by the Court, including all facts contained in the attached Factual Basis for Plea, unless otherwise covered by a proffer agreement.  Nor do these protections apply to any facts the Government learns prior to sentencing by any means other than the Defendant's own statements.

18.  Pursuant to Sentencing Guideline Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the United States may move the Court to depart from the Sentencing

7

Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense.  The Defendant understands that:

      a.  The decision as to whether to make such a request or motion is entirely up to the United States.

      b.  This Agreement does not require the United States to make such a request or motion.

      c.  This Agreement confers neither any right upon the Defendant to have the United States make such a request or motion, nor any remedy to the Defendant in the event the United States fails to make such a request or motion.

      d.  Even in the event that the United States makes such a request or motion, the Court may refuse to depart from the Sentencing Guidelines.

### Breach of Plea Agreement

19.  If the Defendant fails to comply with any of the material conditions and terms set forth in this agreement, he will have committed a material breach of the agreement which will release the Government from its promises and commitments made in this agreement.  Upon Defendant's failure to comply with any of the terms and conditions set forth in this agreement, the

Government may fully prosecute the Defendant on all criminal charges that can be brought against him.  With respect to such a prosecution:

a.  The Defendant shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(e)(6) of the Federal Rules of Criminal Procedure, or any other Federal rule, that Defendant's statements pursuant to this agreement or any evidence derived therefrom, should be suppressed or are inadmissible;

b.  The Defendant waives any right to claim that evidence presented in such prosecution is tainted by virtue of the statements he has made; and

c.  The Defendant waives any and all defenses based on the statute of limitations with respect to any such prosecution that is not time-barred on the date that this agreement is signed by the parties.

20.  In the event of a dispute as to whether Defendant has knowingly committed any material breach of this agreement, and if the United States chooses to exercise its rights under the preceding paragraph, and if the Defendant so requests, the matter shall be submitted to the Court and shall be determined by the Court in an appropriate proceeding at which Defendant's disclosures and documents shall be admissible and at which time

9

the United States shall have the burden to establish the
Defendant's breach by a preponderance of the evidence.

### Forfeiture

21.    The Defendant agrees to identify the proceeds from, or
traceable to, the unlawful gratuity charged in Count 1, including
any assets derived from, or traceable, to the proceeds of
unlawful activity in which the Defendant has or had any financial
interest, and any facilitating property.  The Defendant agrees to
take all steps as requested by the United States to locate or
repatriate property subject to forfeiture, and further agrees not
to contest the forfeiture of his interests in such property.  The
Defendant also agrees not to assist others in making claims
against seized property.

22.    The Defendant agrees to hold the United States, its
agents and employees harmless from any claims whatsoever in
connection with the seizure or forfeiture of property covered by
this agreement.

23.    The Defendant further agrees to waive all interest in
any such asset in any administrative or judicial forfeiture
proceeding, whether criminal or civil, state or federal.  The
Defendant agrees to consent to the entry of orders of forfeiture
for such property, announcement of the forfeiture at sentencing,
and incorporation of the forfeiture in the judgment.  The
Defendant acknowledges that he understands that the forfeiture of

assets is part of the sentence that may be imposed in this case
and waives any failure by the court to advise him of this,
pursuant to Rule 11(b)(1)(J), at the time his guilty pleas are
accepted.

24.   The Defendant agrees to take all steps as requested by
the United States to pass clear title to forfeitable assets to
the United States, and to testify truthfully in any judicial
forfeiture proceeding.  Defendant acknowledges that all property
covered by this agreement is subject to forfeiture as proceeds of
illegal conduct or property involved in illegal conduct giving
rise to forfeiture, and Defendant agrees to the entry of a
judgment against him in an amount not less than $24,000,
representing the proceeds of the unlawful gratuity charged in
Count 1.

### Non-binding on Non-parties

25.   The Defendant understands that this agreement is
binding only upon the United States Department of Justice,
Criminal Division, Public Integrity Section and Asset Forfeiture
and Money Laundering Section.  This agreement does not bind any
United States Attorney's Office, nor does it bind any state or
local prosecutor.  It also does not bar or compromise any civil
or administrative claim pending or that may be made against the
Defendant.  If requested, however, the Public Integrity Section
will bring this agreement to the attention of any other

prosecuting jurisdiction and ask that jurisdiction to abide by the provisions of this plea agreement.  The Defendant understands that other prosecuting jurisdictions retain discretion over whether to abide by the provisions of this agreement.

26.  This agreement and the attached Factual Basis for Plea constitute the entire agreement between the United States and the Defendant.  No other promises, agreements, or representations exist or have been made to the Defendant or the Defendant's attorneys by the Department of Justice in connection with this case.

27.  The parties to this agreement agree that this agreement may be amended only by a writing signed by all parties and sanctioned by the Court.

12

FOR THE UNITED STATES

ANDREW LOURIE
ACTING CHIEF
PUBLIC INTEGRITY SECTION

Date: 12/29/06

By: _____
James A. Crowell IV
John P. Pearson
Trial Attorneys
Public Integrity Section

By: _____
Patrick Murphy
Trial Attorney
Asset Forfeiture and
Money Laundering Section

U.S. Department of Justice
Criminal Division
1400 New York Ave., NW
Washington, DC 20005
(202) 514-1412
James.crowell@usdoj.gov
John.pearson@usdoj.gov
Patrick.murphy@usdoj.gov

13

## Acknowledgments

### The Defendant

I, Steven Merkes, hereby expressly acknowledge the following: (1) that I have read this entire Plea Agreement; (2) that I have had an opportunity to discuss this Plea Agreement fully and freely with my attorney; (3) that I fully and completely understand each and every one of its terms; (4) that I am fully satisfied with the advice and representation provided to me by my attorney; and (5) that I have signed this Plea Agreement knowingly, freely and voluntarily.

12/10/06
_____
DATE                                    Steven Merkes


### Counsel for the Defendant

I, Thomas Abbenante, attorney for Steven Merkes, hereby expressly acknowledge the following: (1) that I have discussed this Plea Agreement with my client; (2) that I have fully explained each one of its terms to my client; (3) that I have fully answered each and every question put to me by my client regarding the Plea Agreement; and (4) in my opinion, my client completely understands the letter and spirit of all of the Plea Agreement's terms.

December 10, 2006
_____
DATE                                    Thomas Abbenante

14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,    )
                             )
            v.               )    Criminal No.
                             )
STEVEN MERKES,               )    <u>Count One</u>: 18 U.S.C. § 201(c)
                             )                 (Illegal Gratuity)
        Defendant.           )
_____ )

### <u>FACTUAL BASIS FOR PLEA</u>

The United States of America, by and through its undersigned counsel, and the Defendant, **STEVEN MERKES**, hereby stipulate to the following facts pursuant to United States Sentencing Guideline § 6A1.1 and Federal Rule of Criminal Procedure 32(c)(1):

1.    Until on or about January 31, 2005, the defendant MERKES served in the United States Air Force with the rank of Master Sergeant.  On or about January 31, 2005, defendant MERKES was honorably discharged, and on or about February 22, 2005, he began work as a civilian public official employed by the Department of Defense (DOD).

2.    In both the Air Force and in his civilian DOD employment, defendant MERKES worked as a logistical planner for

the United States Headquarters, Special Operations Command-Europe
(HQSOCEUR). Defendant MERKES was stationed in Stuttgart,
Germany.

3. In both positions, Defendant MERKES's official duties
consisted of planning and military exercises for U.S. Special
Operations forces in the European theater of operations.

4. Through his positions, defendant MERKES worked with
contractors and vendors that provided services and support in
connection with military exercises.

5. Pursuant to those duties, defendant MERKES worked with
active duty contracting officers to evaluate, select, and manage
outside contractors on government contracts. The defendant was
authorized to and did recommend to the contracting officers
specific vendors.

6. Philip Bloom was a United States citizen who operated
and controlled construction and service companies in Romania and
the Republic of Iraq that did business with the United States
government. One of Bloom's companies was Global Business Group
(GBG).

### Merkes's Agreement with Philip Bloom

7. In or about 2003, defendant MERKES met Bloom in
Romainia and discussed working for one of Bloom's companies but
ultimately did not become employed by Bloom in 2003 or 2004.

8. In or about March 2005, defendant MERKES informed Bloom

2

that he was once again interested in working for Bloom.

9.    In or about March 2005, Bloom informed defendant MERKES that he intended to bid on a government contract that was being contracted by the U.S. Army in Europe (USAEUR) and that he was interested in discussing defendant Merkes working for him.

10.    In or about March 2005, defendant MERKES sent Bloom an email and attached public documents relating to the contract solicitation of a USAEUR contract.  In the email, MERKES said, "here is a small document for your eyes only.  Let me know what you want."

11.    In or about March 2005, Bloom and defendant MERKES agreed that GBG would hire defendant MERKES, at a salary of $12,000 per month, in exchange for MERKES's assistance in obtaining the USAEUR contract and other future government contracts.

12.    In or about April 2005, MERKES accepted Bloom's offer and sent his Bank of America checking account information to GBG, knowing that the payments to be received were for official acts he had agreed to perform.

13.    In or about April 2005, GBG wire transferred $24,000, representing the first two months' salary, to defendant MERKES's bank account for and because of the official acts that defendant MERKES had agreed to perform.

14.    In or about 2005, defendant MERKES took and agreed to

3

take official acts to benefit Bloom and his companies, including

reviewing Bloom's bid proposal on the USAEUR contract.


DATED:    _December 29_, 2006, at Washington, DC.


For the Defendant                    For the United States

_[signature]_                        Edward C. Nucci
STEVEN MERKES                        Acting Chief
Defendant                            Public Integrity Section


_[signature]_                        _[signature]_

Thomas Abbenante                     James A. Crowell IV
Counsel for the Defendant            John P. Pearson
                                     Trial Attorneys
                                     Public Integrity Section

                                     Patrick Murphy
                                     Trial Attorney
                                     Asset Forfeiture and Money
                                     Laundering Section

                                     United States Department of Justice
                                     Criminal Division
                                     1400 New York Ave. NW
                                     Washington, DC 20005
                                     (202) 514-1412
                                     James.crowell@usdoj.gov
                                     John.pearson@usdoj.gov
                                     Patrick.murphy@usdoj.gov

4